UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
FRANCIS AULETA,

                            Plaintiff,

                     v.                                      9:07-CV-0307
                                                              (TJM)(GJD)
GLENN S. GOORD, *et al.*,

                            Defendants.
-----------------------------------------------------------------------

**APPEARANCES**                               **OF COUNSEL:**

FRANCIS AULETA
Plaintiff *pro se*
98-A-7293

HON. ANDREW M. CUOMO               DAVID M. FINKELSTEIN, ESQ.
Office of the Attorney General
State of New York
Department of Law
The Capitol
Albany, New York 12224

THOMAS J. MCAVOY, SENIOR JUDGE

### DECISION and ORDER

Presently before the Court is a Motion by Francis Auleta ("Plaintiff" or "Auleta") for injunctive relief. (Dkt. No. 15). The Defendants have filed a Response in opposition to the Motion (Dkt. No. 19), and Plaintiff filed a Reply. Dkt. No. 24.

**I.    Background.**

The underlying action asserts that Plaintiff has been denied his First Amendment rights to free exercise of his chosen religion, Wicca. Dkt,. No. 1. The Complaint names two Defendants, Glenn Goord, the Commissioner of the Department of Corrections and Mark Leonard, the Director of the Office of Ministerial Services. The Complaint details

Plaintiff's experiences at three correctional facilities that appear to have spanned six years.[1] These facilities include Clinton Correctional Facility, Collins Correctional Facility, and Mohawk Correctional Facility where Plaintiff is presently incarcerated. The Complaint also alleges that the Defendants' actions have violated his rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc-1(a) ("RLUIPA"), and have denied him equal protection of the law.  This action was filed on March 23, 2007.  Plaintiff's Motion for a Preliminary Injunction was filed on June 18, 2007.  Defendants filed a Motion to Dismiss on June 19, 2007 that is pending before Magistrate Judge DiBianco and will be addressed in a separate Report and Recommendation.

**II.     The Motion For Injunctive Relief.**

   **A.     The Allegations.**

In his Motion for injunctive relief, Plaintiff alleges that he has been issued permits by individual facilities to possess, use, and display certain religious paraphernalia, but the permits are not honored when he is moved to a different facility.  Plaintiff alleges that this is due to the fact that the Wiccan faith is not addressed in DOCS Directive 4202.  Plaintiff alleges that absent a preliminary injunction enforcing such permits on a state-wide basis, he is unable to worship freely and in the same manner is other inmate faith groups.  Dkt. No. 15. Other than the issues of in cell herb burning and tarot cards,

---

[1] While Plaintiff's Complaint contains an abundance of generic and conclusory allegations, it is slight on specific factual details such as the dates on which events occurred.  However, Defendants attach to their Response to this Motion Plaintiff's movement history within the Department of Corrections ("DOCS") from December 1998 through the present.  Dkt. No. 19, Exhibit A to Finkelstein Affirmation.

discussed below, Plaintiff's only complaint appears to be that he is "'afraid' to set up his shrine." However, Plaintiff does not allege that Defendants Leonard or Goord have taken any steps to revoke the permit he was issued on May 29, 2005, to possess and display the shrine, or that the personnel at Mohawk have not honored the permit.[2]  Dkt. No. 15, Exhibit 4.

Plaintiff further alleges that the Wiccan holy days are determined based upon solstices and equinoxes.  Plaintiff alleges that the DOCS calendars for other religions taken these variances into account and they are reflected on the DOCS' schedules (e.g. for Native Americans and Wotanism), but are not reflected on the schedules for Wiccans.[3]  Thus, Plaintiff alleges he is not being permitted to properly observe his holy days. Plaintiff does not identify which holy days he has been prevented from observing, when these interruptions allegedly occurred, or how his worship or observance of the holy day was interrupted or prevented by the Defendants to this action.  Despite Plaintiff's allegation that he has "little to no choice when he is scheduled to work on a holy day, but to work as scheduled," the Court notes that both the August 2004 and May 2005 permits issued to Plaintiff granted Plaintiff permission to observe all holy days as "Non-program days."  Dkt. No. 15, Exhibits 2 and 4.  Plaintiff does not allege that his permit is not being honored at Mohawk.

Plaintiff also alleges that sage and other herbs, or incense, should be burned on

---

[2]Plaintiff has been at Mohawk since May 3, 2005.  Dkt. No. 19, Harding Affidavit, paragraph 5; Finkelstein Affidavit, Exhibit A.

[3]Plaintiff alleges that this requires him to consult with the coordinating Chaplain as to the correct date and makes it impossible for him to observe independent of the recognized group.

3

his personal altar for the purpose of cleansing the ritual space. Plaintiff apparently seeks to burn the herbs or incense in his cell twice per day. Plaintiff alleges that Defendant Leonard applies a "what is mandatory" review to his requests in this regard, but does not apply that same standard to the native Americans. Dkt. No. 15, paragraph 27. Plaintiff alleges that he "managed to get an outside source, (The founder of the Church of the World Tree), to send written verification of this practice" but it was ignored. Dkt No. 15, paragraph 25.[4] Plaintiff alleges that such burning is permitted during the Wiccan group service at Mohawk, but is not permitted in individual cells. Plaintiff alleges that Native Americans, as a result of a settlement, are permitted to engage in the practice of smudging[5] and, therefore, he should be permitted to burn herbs or incense in his cell.[6]

---

[4]Plaintiff did not present any such letter on this Motion or his Reply in support of this Motion. Rather, the letter from Deacon Edwards, with respect to sage/sweetgrass for burning, states "If your outside source says you must have them we can use that to argue your point. I am still waiting to have contact with your outside advisor." Dkt. No. 15, Exhibit 1. Plaintiff attached to his Reply the first page of a letter from Gail Wood, a priestess of Wicca, stating that "While one tradition and teachings might not stress the importance of specific herbs, others will. It is a highly individual, eclectic, and creative religion." Dkt. No. 24, Exhibit 12.

[5]Plaintiff acknowledges that the practice of smudging is not permitted in individuals cells at Mohawk, where Plaintiff is presently housed. Dkt. No. 24, paragraphs 7-8. The Court notes that each facility is charged with the responsibility of identifying appropriate locations within the facility where smudging may be safely performed in such facility. Dkt. No. 19, DOCS Directive 4202.

[6]Plaintiff takes exception with the use of the term "cell" in his Reply, suggesting that the Defendants are trying to mischaracterize the setting. Dkt. No. 24, paragraph 7. However, the Court uses the term to address individual living quarters within a correctional facility without implying anything regarding the physical characteristics of that living space, and the Court read Defendants' usage in the same manner. Plaintiff also took exception with the Defendants' use of the word incense in describing the items he seeks to burn in his cell. However that is exactly one of the allegations in Plaintiff's Affidavit. *See* Dkt. No.

4

Plaintiff also seeks to possess his own set of Tarot cards. Plaintiff alleges that he was advised by Defendant Leonard that such a request must be addressed by each individual facility, and that the Deputy Superintendent for Security at Mohawk[7] has denied such a request. Plaintiff was advised by the Deputy Superintendent for Security at Mohawk that the cards could be used to scare or intimidate other inmates. The denial of tarot cards was allegedly grieved, and the grievances denied. Plaintiff alleges that this denial may result in additional harm because many of the books and magazines relating to Wicca contain information on, or references to, Tarot cards. Plaintiff alleges that the current policy could result in Plaintiff being denied access to such books or magazines. Plaintiff seeks an order directing DOCS to permit him to possess tarot cards.

Finally, Plaintiff alleges that he is likely to be transferred in retaliation for his exercise of his First Amendment rights. He seeks an Order from this Court enjoining such future transfer.

### B. Defendants' Response.

Defendants assert that over the course of the past several years there has been ongoing contact between defendant Leonard, Director of Ministerial Services for DOCS,

---

15, paragraph 22. Finally, Plaintiff claims that Defendants are attempting to mischaracterize the exchange regarding the use of oils as a "ritual space cleansing option." Dkt. 24, paragraph 6. However, the Court notes that a letter signed by Plaintiff stated "I am contacting you today regarding Ritual Space Cleansing options. ... I can use, and offered to use, natural oils..." Plaintiff then requests that particular vendors of such oils be approved and noted that, if they were approved and noted on his permit, "the matter would be finished." Dkt. No. 19, Exhibit D.

[7]This individual is not a party to this action.

and Plaintiff. Leonard states that he also sought guidance from a Wiccan priestess, Gail Wood, "whose authority Mr. Auleta claimed to accept." Dkt. No.19, Leonard Affidavit, paragraph 20. *See also* Dkt. No. 19, Exhibit D, Letter from Auleta to Leonard (stating "Thank you for calling Ms. Wood, this shows beyond a doubt that you are sincere.") In his Affidavit, Leonard states that, over the course of several years, he has approved almost every request Plaintiff has made including the ability to have a shrine on display in his cell, the ability to possess a religious medallion, non-burning candles, a prayer rug, a prayer robe, Wiccan oils, a chalice, plastic knife, altar tile, a wand, a small stone, and a gris-gris bag. The only requests that Leonard has not been able to approve were for tarot cards and the burning of herbs in individual cells. Leonard states that such request are not within his authority due to the related safety and security issues they present. Leonard further states that he revised the Wiccan Holy Day calendar at Plaintiff's suggestion. Leonard Affidavit, paragraph 19. Leonard states that he has no role in decisions relating to the transfer of inmates, and that such decisions "are not subject to a religious veto." *Id.*, paragraph 28.

Defendants also submitted an Affidavit from Rick Harding, the Superintendent of Programming at Mohawk Correctional Facility detailing the requests that Plaintiff has made with respect to religious accommodation issues and the series of approvals that have been issued. Harding states that the only two requests that have been denied were the requests for in cell burning of herbs or incense and for tarot cards. Harding states those request were denied after balancing Plaintiff's requests with the safety of the facility, staff and other inmates. Dkt. No. 19, Harding Affidavit, paragraph 29. Harding stated that administrative and monetary limitations also impacted on those

6

determinations. *Id.*, paragraph 20. Specifically, with respect to the Tarot cards, Harding states that the safety and security concern is that the may be used as a mechanism for one inmate to frighten, control or influence other inmates. *Id.* at paragraph 22.

Defendants submitted the Affidavit of Donald Selsky, DOCS Assistant Commissioner for Facility Operations. Dkt. No. 19, Selsky Affidavit. Selsky stated that burning of materials in cells can not be permitted without seriously compromising the safety and security of inmates and staff. *Id.*, paragraph 4. The concerns include the threat of fire in the facilities, the health and safety issues related to indoor or environmental smoke, and the potential for abuses such as using the materials to cover the odor of prohibited indoor smoking activity. Selsky confirmed that "[a]ll inmates who are members of incense burning religious faith groups (including Catholics, Muslims, Rastifarians, Buddhists, etc.) are absolutely prohibited from burning incense in their individual cells. Id., paragraph 6. However, Selsky confirmed that burning of incense and other religious material is permitted at congregate religious services. *Id.*, paragraph 3.

With respect to the holy day calendar, Defendants submitted a copy of the DOCS 2007 religious holy day calendar, along with a November 10, 2006 transmittal memo to all superintendents and deputy superintendents for Program Services. Dkt. No. 19, Exhibit B to Finkelstein Affirmation. The calendar lists all 2007 holy days by religion, and also contains a chronological listing of all holy days for all religions that DOCS presently recognizes. With respect to Plaintiff's allegations that the calendaring of the Wicca holy days is different than the Wotans and the Native Americans, the

7

Court notes that, although the holy days for all three religions are associated with solstices and equinoxes, the calendar affixes the specific 2007 dates for both Wotanism and Wicca,[8] and the specific dates for the Native Americans are to be selected after consultation with the Native American group at each facility and the facility staff.  Thus, religious groups other than Wicca have had their holy day dates set and calendared for them, despite the need to coordinate with the solstices and equinoxes, and others have been required to consult with the facility staff to establish the appropriate dates.  Nevertheless, the Wiccan holy days were calendared, and the need for special considerations was noted on the calendar.[9]  Accordingly, Defendants assert that the issue relating to the holy days was addressed by DOCS prior to the filing of this Motion.

### B.   The Standards.

The standard a court must utilize in considering whether to grant a request for injunctive relief is well-settled in this Circuit.  As the Second Circuit noted in *Covino v. Patrissi*, 967 F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.  *Id*. at 77 (affirming district court's denial of inmate's request for preliminary injunction); *see also Roucchio v. LeFevre*, 850 F.Supp. 143, 144

---

[8] The same is true for the calendar for Islam.

[9] Plaintiff apparently complains that the Wicca holy day calendar does not relieve his from his programing.  However, priestess Wood advised Defendant Leonard that "being excused from work assignments during Wiccan holy days does not constitute a central or important aspect of the Wiccan faith." Dkt. No. 19, Leonard Affidavit, paragraph 26. Nevertheless, as noted previously, Plaintiff's permit does excuse him from programming on holy days, and has since 2004. Dkt. No. 15, Exhibits 2-3

(N.D.N.Y. 1994) (McAvoy, C.J.).

However, by this Motion, Plaintiff seeks substantially all of the relief he seeks in his underlying action. Accordingly, he must make a showing of "**substantial** likelihood of success on the merits." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988); *Hogan v. Russ*, 890 F. Supp. 146, 150 (N.D.N.Y. 1995).

**(a) Irreparable Harm.**

"The showing of irreparable harm is the 'single most important prerequisite for the issuance of a preliminary injunction.'" *Brown v. Middaugh*, 1998 WL 566791 at *1 (N.D.N.Y. Sept. 3, 1998) (Munson, S.J.) (citations omitted). "The mere possibility of harm is not sufficient: the harm must be imminent and the movant must show he is likely to suffer irreparable harm if equitable relief is denied." *Id*. "Nor will a preliminary injunction be granted if the movant can be compensated adequately by money damages." *Id*.

As to this first factor, with respect to (1) the request that Plaintiff not be transferred out of Mohawk, (2) the request that the tarot card policy not be extended to magazines and books that mention tarot cards, and (3) the request for an Order from this Court declaring that any permit issued to Plaintiff shall be enforced on a state-wide basis, Plaintiff does not seek to prevent ongoing conduct. Rather, he seeks to avoid the possibility of such an event occurring in the future. The Court notes that allegations of future injury without more do not establish a real threat of injury. *Gibson v. Walker*, 95-CV-1649, (N.D.N.Y. Dec. 7, 1995) (DiBianco, M.J.) (Docket No. 6), *adopted,* (Docket No. 8) (Feb. 2, 1996) (citing *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238

(S.D.N.Y. June 27, 1994)).  Therefore, the Court finds that, for purposes of the application currently before the Court, the plaintiff has failed established that he may suffer irreparable harm with respect to (1) the request that Plaintiff not be transferred out of Mohawk,[10] (2) the request that the tarot card policy not be extended to magazines and books that mention tarot cards, and (3) the request for an Order from this Court declaring that any permit issued to Plaintiff shall be enforced on a state-wide basis.

With respect to the remaining requests, this Court will presume irreparable harm for purposes of this Decision and Order only. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984); *see, e.g., Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991)

**(b)    Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits and a Balance of Hardships Tipping Decidedly Toward the Plaintiff.**

As noted above, a party is not entitled to injunctive relief unless there is also proof of likelihood of succeeding on the merits of a claim, or evidence that establishes sufficiently serious questions going to the merits of such a claim and a balance of hardships tipping decidedly toward the party seeking such relief.  *See Covino*, 967 F.2d at 77; *Hogan,* 890 F. Supp at 150. As noted above, because Plaintiff seeks mandatory relief, he must make a substantial showing on this issue.

**1.    Plaintiff's Claims.**

"Prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged

---

[10]The law is also clear that an inmate does not have a right to be confined to the prison of his own choosing.  *Mendez* v. *Mantello,* No. 93-CV-0908, (N.D.N.Y. September 1, 1994) (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1046 (2d Cir. 1989).

10

infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988). To succeed on a First Amendment Free Exercise claim, Plaintiff must demonstrate that the Defendants have substantially burdened the exercise of his religion for reasons that are not related to a legitimate penological interest or concern. The Second Circuit has recognized that when addressing Free Exercise claims the Court must balance the constitutional rights of the inmates with "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). "The standard is one of reasonableness, taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is 'reasonably related to a legitimate penological interest. *Burgess v. Friedman* 9:05-CV-0379, 2005 WL 3531459, *2 (N.D.N.Y. December 22, 2005)(Mordue, D.J.) *citing Turner v. Safley*, 482 U.S. 78, 81 (1987). Once a legitimate penological interest has been proffered "the prisoner bears the burden of showing that these concerns 'were irrational.'" *Id., citing Fromer v. Scully*, 874 F.2d 69, 74 (2d Cir. 1989); *Rahman v. Goord*, 2007 WL 1299408, *5 (W.D.N.Y. 2007).

With respect to Plaintiff's claims under RLUIPA, Plaintiff must make a showing that the Defendants have placed a substantial burden on his exercise of his religion "unless the burden furthers 'a compelling governmental interest and does so by the lest restrictive means." *Rahman*, *supra*. at *5. The Untied States Supreme Court has made it clear that prison security is a compelling state interest and "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to

11

maintain order and safety." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

Finally, the Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985). To establish an equal protection claim, plaintiff must show the existence of a similarly situated group who has been treated differently than plaintiff. *Brown v. City of Oneonta,* 911 F. Supp 580, 587, *modified* 106 F.3d 1125 (2d Cir. 1997).

### 2. Substantial Burden.

This Court has carefully reviewed Plaintiff's submissions, and Defendants' response thereto. The Court finds that Plaintiff has not established that the Defendants' actions have substantially burdened the exercise of his religion with respect to the denial of the tarot cards, the in cell burning prohibition or the alleged deficiencies in the holy day calendar.[11] Clearly, Plaintiff has not made a substantial showing that he is unable to practice his religion due to the burning, tarot card and calendar issues presented in this Motion.

### 3. Reasonableness of the Religious Restrictions.

Turning to the reasonableness of the limitations, in *Turner*, the Court directed that a court consider four factors in determining the reasonableness of a prison regulation. Those factors include (1) whether there is a valid and rational connection between the regulation and a legitimate governmental interest offered to justify it; (2) whether there are alternative means for exercising the right that remain available to the

---

[11] It appears to this Court that the holy day calendar was a moot claim before this Motion was filed. Plaintiff has pointed to no impediment in his exercise of his religion associated with the alleged deficiencies in the calendar.

inmate; (3) the impact on guards and other inmates in making the accommodation, as well as the impact on prison resources; and, (4) the absence of ready alternatives evidencing the reasonableness of the regulation. *Turner*, *supra.* at 89-90.

The penological interests asserted by the Defendants are substantial and compelling. The collective well being, safety and health of all staff and inmates addressed in Defendants' moving papers, as well as the security issues raised by Defendants, compel this Court to find that the Defendants' interests are compelling.

Plaintiff has not pointed to any alternative means to address his requests that would have *de minimis* adverse effect on the asserted penological interest and the prison resources. Viewed from the RLUIPA perspective, Plaintiff has not shown that there is any less restrictive means to meet the concerns of the compelling state interest and his request for accommodation.

The impact on other inmates, as well as staff members was addressed by the Defendants in the discussion of the safety and security issues, and the Affidavits submitted in support of their opposition to this Motion. It is clear that the potential harm on staff, inmates and the facility presented with the in cell burning is significant and serious. With respect to the issue of the tarot cards, a similar factual case arose in *Reese v. Coughlin*, 1996 WL 374166 (S.D.N.Y. 1996). Like the case before this Court, the *Reese* plaintiff made no showing that he could not practice his religion without using tarot cards. The *Reese* Court considered, in detail, the options available to the facility in trying to accommodate the plaintiff's request and, applying *Turner*, found that the defendants had acted reasonably. Significantly, the *Reese* Court noted that "[t]he

13

threat posed by the cards is predicated on their possession. It would be entirely unreasonable, if not impossible, to allow possession of the cards with monitoring on a day-to-day, cell-by-cell basis against their misuse."*Reese*, at *5.[12]  The same analysis is equally applicable to this case.

With respect to ready alternatives, it is uncontroverted that the Defendants have permitted Plaintiff to engage in herb burning and use of tarot cards at congregate services.  With respect to the issue of burning, that is the same privileges extended to all religious groups at Mohawk, including the one group that has permission to smudge. Plaintiff's November 12, 2004 letter to Leonard, which he has attempted to distinguish on this Motion, clearly states that certain oils would suffice to meet his needs with respect to "ritual space cleansing." Finally, as the *Reese* case highlights, there is not easy alternative, to possession of the tarot cards that would satisfy Plaintiff, protect other inmates from abuse, and not unreasonably burden the correctional facility's resources and staff.

**iv.  Equal Protection Claim.**

With respect to Plaintiff's equal protections claims, Plaintiff has not shown that similarly situated religious groups have been treated differently.  Plaintiff has pointed to no other group that has sought, and been granted permission to possess tarot cards at Mohawk. Likewise, from the evidence presented, it is clear that all groups at Mohawk, including those permitted to smudge, are not permitted to participate in such activity in their individual cells.  Finally, with respect to the calendar issue, it appears that DOCS

---

[12]Auleta also sought the accommodation of being permitted to possess the cards for use only in his living quarters and class. Dkt. No. 15, paragraph 35.

deals with calendaring in at least two different manners.  One is to calendar the dates when the events occur in a particular year (Muslim, Wotan, and Wicca) and the other is two require the group to consult with facility staff to establish a proper date. Plaintiff appears to have complaints about both methods, but he has not demonstrated that the other groups are similarly, or that there has been any disparate treatment that violates his constitutional or statutory rights.  With respect to the ability to be excused from his programing, the evidence is overwhelming that plaintiff has enjoyed that privilege since 2004, even though DOCS was advised by a Wiccan priestess that "being excused from work assignments during Wiccan holy days does not constitute a central or important aspect of the Wiccan faith." *Supra* at Note 9.  Thus, even though an excuse from programming it is not noted on the calendar, Plaintiff has failed to establish that he has been actually treated any differently than any similarly situated inmate faith group, or that he has suffered any constitutional injury.  Therefore, this Court must deny Plaintiff's request for injunctive relief.

WHEREFORE, based upon the above, it is hereby

ORDERED, that Plaintiff's Motion for injunctive relief (Dkt. No.15) is denied, and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

DATED: August 28, 2007

Thomas J. McAvoy
Senior, U.S. District Judge